UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:21-cr-00048 |
| | ) | |
| SAMMIE LEE SIAS, | ) | |

## DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR NEW TRIAL

COMES NOW Defendant Sammie Lee Sias, by and through his undersigned counsel, and respectfully moves the Court to enter a judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or in the alternative, enter an Order granting a new trial, pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure.

Defendant's trial on a two count Indictment began on July 26, 2022. (Doc. 67). On July 28, 2022, Defendant moved for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29, after the Government rested its case-in-chief. (Doc. 69). Defendant's motion was taken under advisement and subsequently denied by the Court on July 29, 2022. (Doc. 70). Thereafter, the jury returned a verdict of guilty on both counts of the Indictment later that same day.

## I.    Rule 29 Motion

In deciding a post-trial renewal of a Rule 29 motion, a district court must

determine whether, viewing all evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond reasonable doubt. *United States v. Grigsby*, 111 F.3d 806, 833 (11th Cir. 1997) (reversing district court's denial of defendant's Rule 29 motion); *see also United States v. Cartwright*, 359 F.3d 281, 291 (3d Cir. 2004) (evidence found insufficient where government asked the jury to make a series of inferences on weak facts where "countless other scenarios that do not lead to the ultimate inference the government seeks to draw" were also plausible).

Here, the government did not present sufficient evidence to convict Defendant of the crimes alleged in the Indictment.  For example, as Defendant previously pointed out, the evidence in this case regarding Count One calls for the same result reached in *United States v. Katakis*, 800 F.3d 1017 (9th Cir. 2015), where the district court's decision to grant the defendant's post-trial Rule 29 motion was upheld on appeal.  The *Katakis* court persuasively explained that a deletion on a computer is not actual destruction.  And the fact that deleted files were "not displayed to the user" is a "degree of concealment . . . not sufficient to satisfy § 1519." *Id.* at 1029.  In other words, deletion is not concealment when the deletion can be undone without forensic tools. *Id.* at 1030.  The testimony of the FBI's computer expert in this case about Microsoft Windows' recovery process leads to the conclusion reached in

2

*Katakis*. The deleted files were in the same place on the hard drive just waiting to be accessed without forensic tools.  The fact that the FBI chose to use a forensic tool such as the FTK program instead of Microsoft Windows to look at the deleted files does make *Katakis* inapplicable.  Finally, the decision in *United States v. Davis*, No. 20-10084 (9th Cir. May. 13, 2021) is inapplicable because that case involved a deleted photo on a cell phone -- a different technology than the computers at issue in *Katakis* and this case.  Moreover, regarding Count Two, the evidence was likewise insufficient to sustain a conviction.  Therefore, the Court should enter judgment of acquittal because, even taken in the light most favorable to the Government, there was insufficient evidence at trial to establish beyond a reasonable doubt all of the elements of all of the crimes alleged in the Indictment.

## II.    Rule 33 Motion

If the Court grants a post-trial judgment of acquittal, Fed. R. Crim. P. 29(d)(1) provides that the Court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. *United States v. Miranda*, 425 F.3d 953 (11th Cir. 2005).  Fed. R. Crim. P. 33 states that on motion of the defendant, the Court may grant a new trial if required in the interest of justice.  The interest-of-justice standard is "a broad standard" that "is not limited to cases where the district court concludes that its prior ruling, upon which it bases the new trial, was legally erroneous." *United States v. Vicaria*, 12 F.3d 195,

198 (11th Cir. 1994).  The decision to grant or deny a new trial motion is within the sound discretion of the trial court. *United States v. Pedrick*, 181 F.3d 1264 (11th Cir. 1999) (affirming Judge Alaimo's grant of a motion for new trial).

The standard for granting a new trial on the basis of the weight of the evidence is not the same as the standard for evaluating the sufficiency of the evidence under Rule 29.  First, the trial court is not required to view the evidence in the light most favorable to the verdict. Second, the trial judge may weigh the evidence and consider the credibility of witnesses. *United States v. Hernandez*, 433 F.3d 1328, 1335 (11th Cir. 2005).

### A.    Pre-Trial Conference and Trial Testimony

In order to address specific testimony allowed at this trial, it should be noted that during the July 14, 2022 pre-trial conference, the Court allowed the government—over strenuous objection from Defendant—to elicit testimony at trial of specific acts related to SPLOST funding, on the government's assertion that it needed to make such a showing to establish "materiality" for both counts of the indictment.  The Court granted the government's motion generally—because the government offered no specifics and only made vague assurances that its case "wouldn't go into everything"—advising the government that there would be "guard rails" on the testimony.  (Doc. 80).

At trial, the government called nine witnesses in its case in chief.  Five[1] of the nine witnesses testified solely regarding SPLOST funding generally or a particular sale paid for with SPLOST funding specifically.  Of the other four witnesses, two[2] testified about both SPLOST purchases and aspects of Counts One and Two.  As such, five of the nine government witnesses who testified did so exclusively on matters outside of the two specific counts upon which Defendant was indicted, and seven of the nine witnesses testified in whole or part about SPLOST funding.[3]

When Defendant objected to these witnesses, both at the pre-trial conference

---

[1] Olivia Scott testified that she was the treasurer of the Sandridge Community Association and resigned because of issues with Defendant using checks and money in or near the time of SPLOST VI (2014) (her testimony wasn't clear on exactly when she was treasurer but the government indicated it was in the 2014 time frame); three witnesses (collectively the "three vendor witnesses") testified that their businesses sold goods—one was a lectern, one was kitchen equipment including a refrigerator, and one was speed bumps for a parking lot—to Jamestown Community Center in 2014.  In all three instances, the witnesses testified that they shipped the goods to the center, were paid by a personal credit card from Defendant, and emailed the receipt to Defendant's email address in 2014.  The fifth witness to testify solely about SPLOST spending was the FBI forensic accountant.

[2] The first of those two witnesses, Dr. Fason, was the treasurer of Sandridge Community Association after Olivia Scott.  She received a July 30, 2019 subpoena from FBI Special Agent McKee and testified both to her work with Sandridge and her interaction on July 30 and thereafter. The second of those witnesses, Agent McKee, similarly testified about SPLOST transactions as part of his investigation, as well as events surrounding Counts One and Two.

[3] Only the FBI computer expert and FBI Special Agent Kirkland, who testified about the August 8, 2019 search of Defendant's home, testified solely about the counts contained in the Indictment.

generally and at trial as they were being called, the government informed the Court that it needed to adduce such evidence to show "materiality" and that the evidence would be tied to specific files that were deleted.  Upon counsel's recollection, the government also said such evidence would "complete the story."  As shown at trial—where Defendant objected to the totality of the evidence—what the government did in fact was put up much of its evidence in a way that unfairly prejudiced the jury about matters that had no bearing on Counts One or Two for which Defendant was on trial.  Some specific evidentiary examples highlight the point:

### 1. The Three Vendor Witnesses

The three vendor witnesses all had similar testimony: they sold goods that were delivered to Jamestown, paid for by Defendant, and they emailed receipts to Defendant's Comcast email address in 2014 (one transaction may have been in 2015).  The government thereby suggested to the jury that Defendant therefore *destroyed or otherwise deleted* the receipts that these witnesses' companies sent to him, which sounded ominous and inculpatory given the allegations in Count One, where the government charged Defendant with deleting 7400 files on August 5, 2019.  *However*, these witnesses testified that they sent *receipts* by *email* to Defendant in 2014 (or 2015), and there is no evidence that the emails or receipts were in existence on August 5, 2019, the relevant date for Count One.  Therefore, the insinuation that these receipts were kept by Defendant *until* August 5, 2019, and

then deleted on that night is highly prejudicial, yet wholly unsupported by any evidence.  To wit: the government put the list of the 7400 deleted files into evidence, and none of them appear to be emails, much less emails from those vendors.  Separately, the FBI agent admitted that he subpoenaed and received all of Defendant's Comcast emails since 2012, but no witnesses testified that any emails were ever deleted on August 5, 2019, or otherwise.  Despite the absence of any evidence, the government twice stated in rebuttal closing that there were "deleted emails," which itself was an inaccurate and loaded statement in today's political climate warranting a new trial, but especially so when the government called witnesses who described emails/receipts sent to Defendant in 2014-15 and then focused much of its arguments on "deletions" of files.  The jury could not possibly separate the unrelated issues of whether Defendant preserved receipts from 2014-15 from whether he wrongfully deleted a file folder on August 5, 2019.

Indeed, no witnesses testified that Defendant retained the emails beyond the date they were sent in 2014.  The government could have tried to adduce such testimony, but didn't, because the opposite connotation was more sinister: that these three emails and receipts *must have* been among the 7400 files deleted.  Otherwise, why put forth such evidence?  It was hugely misleading while not being probative at all of the issues the government said it would use this evidence to prove.  Anyone can review Government's Exhibit 1 and see if any of the deleted files are Comcast

emails or receipts from vendors (as opposed to invoices created by Defendant, which is what the government focused on in the deleted file list).  They are not.

### 2.  The FBI Forensic Accountant

The government failed to designate the FBI forensic accountant as an expert and the Court allowed her to testify—after the government presented to the jury the accountant's impressive pedigree.  The government then said the witness did not need to be allowed to testify as an expert because she "was only saying what information she would want to look at" as an FBI forensic accountant.  That is the definition of an expert witness -- someone who has specialized knowledge beyond the ken of the average layperson.  A witness who needs specialized training to simply do their job testifying what information she needs to complete her tasks is the essence of an expert.

### B.    Receipts

Defendant's objection to the forensic accountant's goes beyond her failure to be identified before trial as an expert; the objection also goes to her testimony that she could not complete her tasks because she did not have *receipts*.  Yet again it is worth noting that there was *no evidence* adduced at trial that any of the 7400 files deleted were *receipts*.  So the jury hears that *receipts* prevent the accountant from doing her job and 7400 *files* were deleted, but the government never explained how or when the receipts came to be missing.  Indeed, the only evidence on the point

8

came from Richmond County employee Maurice McDowell, who said that he never required receipts but he had a meeting with four people in 2017 where the documents he retained in a folder about the Jamestown project satisfied the four people at the meeting that the Jamestown project was completed appropriately.

The jury could not help but conflate *receipts*—which were not asked for or provided to Richmond County in 2016—with *files* deleted on August 5, 2019, when there was no showing made—or even attempted to be made—by the government that any files deleted were in fact receipts.  That conflation alone deprived Defendant of the opportunity to receive a fair trial and warrants a new trial.

### C.     September 2019 subpoenas

During the trial, the government also presented evidence regarding subpoenas served on Defendant in September 2019—a month *after* the crimes charged in Counts One and Two were allegedly completed.  The FBI agent testified that Defendant gave him thumbdrives on September 11 and 12, 2019 that were previously plugged into Defendant's laptop, which is arguably relevant, but then, over objection, the government asked the agent *why* he gave Defendant these subpoenas, to which he testified to the effect of his intention "to give Defendant a second and third chance to produce the information."  That evidence had absolutely no probative value, was highly prejudicial, bolstering, and designed to make the government to "look like the good guy" in the eyes of the jury.

**D.      FRE 404(b) and Local Rule 16.2**

The government not only adduced all of the evidence about SPLOST funds—over Defendant's repeated objections—but did so without the notice required by FRE 404(b) and Local Rule 16.2, parameters about what parts of the SPLOST funding it would go into (indeed, there were snippets of information presented at trial about purchases concerning a washer and dryer, a lectern, speed bumps, a refrigerator, sinks, flooring, air conditioning, water fountains and computers). Moreover, there were no limiting instructions when this testimony was presented, so the jury heard three days of the government's case, where the majority of the government's witnesses were called to testify only about SPLOST funding and where the jury was left with the impression that crimes involving SPLOST funding was a central part of the government's case.  Indeed, the government used the very point of SPLOST funding as an impeachment tool against witnesses called by Defendant ("are you aware" questions centered on SPLOST purchases).  The only time where the jury got any instruction as to limitations on some of this testimony was in the middle of the jury instructions at the end of the trial.  This approach deprived Defendant of a fair trial on the specific charges in the indictment and warrants a new trial.

This issue was further compounded by the government's assurance that it would only go into SPLOST funding "in limited fashion," which provided less

notice than what Rule 404(b) requires and prejudiced Defendant because there was no way to call defense witnesses to rebut allegations that SPLOST projects were not completed when the government had not announced what particular work it was questioning.  In fact, by the end of the trial, it seemed that the government did not question whether the work was performed at Jamestown and instead was just questioning the lack of receipts, insinuating that those were destroyed on August 5, 2019, without providing supporting proof.

## III.   Conclusion

Under the totality of the circumstances, and for the reasons advanced, the Court should grant Defendant's motion for acquittal, or in the alternative, grant Defendant's motion for a new trial.

Respectfully submitted this 12th day of August, 2022.

*/s/ Ken Crowder*
CROWDER STEWART LLP
Post Office Box 160
Augusta, Georgia 30903

## **CERTIFICATE OF SERVICE**

The undersigned certifies that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

This 12th day of August, 2022.

*/s/ Ken Crowder*
CROWDER STEWART LLP
Post Office Box 160
Augusta, Georgia 30903