UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   1:21-cr-00048 |
| | ) |
| SAMMIE LEE SIAS, | ) |

### AFFIDAVIT OF SAMMIE LEE SIAS

SAMMIE LEE SIAS personally appeared before the undersigned notary public and, after being duly sworn, declared:

1.

Being duly sworn, the undersigned deposes and says upon oath the following: My name is Sammie Lee Sias. I am of lawful age and am otherwise competent to give this affidavit based upon my personal knowledge. This affidavit is given to support a Motion for Judgment of Acquittal or in the Alternative, for a New Trial in a case in which I have been convicted as a Defendant.

2.

Crowder Stewart, Attorneys at Law, LLP represented me from October 16, 2019, until August 30, 2022 when granted permission to withdraw by the United States Magistrate Court, Southern District of Georgia. Their period of representation included the FBI investigation from October 16, 2019, forward, through the Indictment by the Government on July 6, 2021, through the trial on July 26 – 29,

1.

2022, and post-trial until August 30, 2022. I contracted with Crowder Stewart as a paying client. My first contract with Crowder Stewart LLP occurred on October 16, 2019. After I was indicted by the government, we executed a second contract August 3, 2021. No absence of representation existed between contracts.

3.

The government at a public trial convicted me of obstruction of justice and making a false statement t federal agent on July 30, 2022.

4.

In reply to an FBI subpoena dated September 11, 2019, demanding a list of certain computer files, I provided these files on a thumb drive to Mr. Troy Clark Wednesday, May 6, 2020. I provided this evidence to Mr. Troy Clark of Crowder Stewart LLP with clear and understandable instructions. Those instructions were, take this thumb drive, make two copies, one for the office, one for me, and give the original to the FBI. I explained that the evidence on the thumb drive responded to the "cleanup" subpoena as described Mr. Clark that the FBI issued on September 11, 2019. Mr. Clark was knowledgeable of the FBI subpoena that I referenced. At the time I gave the thumb drive containing the files to Mr. Clark there existed no misunderstanding of my instructions.

5.

I presented this subpoenaed evidence to Crowder Stewart during the FBI's ongoing investigation as I was complying with all requirements of the investigation. There was at least one or two occasions where I reviewed certain files with Mr. Clark on the thumb drive after he took possession of it. This occurred at the office of Crowder Stewart.

6.

I followed up followed up several times with Mr. Clark concerning the status of the Thumb Drive, questioning if they turned it over to the FBI. I received no conclusive responses from Mr. Clark.

7.

After attending the Government Reverse Proffer meeting with Mr. Clark on April 8, 2021, I again questioned Mr. Clark about the status of the Thumb Drive and had it been turned over to the government.  Mr. Clark responded that he didn't know anyone over at the Justice Department that he could trust. I turly did not understand why he responded as such, so I then asked if he could turn the Thumb Drive over to the judge? Mr. Clark supplied no conclusive answer to my question.

8.

Mr. Clark then went on to brief me on the sentencing guidelines for defendants referencing the charges the government could indict me for.

9.

3.

On Friday, April 16, 2021, Mr. Clark again briefed me via email on the government's reverse proffer and the discussions that followed. In his email he again covered the opportunity to plead guilty and the consequences of going to trial. He again did not address the Thumb Drive. I made it abundantly clear that I would not plead guilty in my response to Mr. Clark.

10.

Neither Mr. Clark, nor any of the attorneys at Crowder Stewart ever gave the FBI the subpoenaed evidence I provided to them for submission to the FBI during their investigation. To this day, I still do not know why the FBI never received the subpoena's evidence I provided to Crowder Stewart. My instructions were crystal clear for the disposition of the evidence. My life was at stake then and it continues at stake today.

11.

When I presented the FBI subpoenaed evidence to Crowder Stewart, I believed it became their required duty as my defense counsel and officers of the court to immediately provide the subpoena's evidence to the FBI. I presented the evidence with clear instructions for its purpose and disposition. Crowder Stewart knew this. There existed no miscommunication or failure to understand how to process the Thumb Drive evidence. Crowder Stewart obstructed the FBI's investigation when

they refused to provide the Thumb Drive evidence to the FBI in May 2020. The reason they did not is known only to Crowder Stewart.

12.

Now more than two years later after obstructing the investigation, Crowder Stewart's claims that the Thumb Drive evidence had no relevance to my case, or it would have subjected me to additional charges is pure fallacious. When in fact there existed no charges when I provided them the thumb drive evidence. It was an ongoing investigation.

13.

Crowder Stewart has never answered my question as to why they did not turn the Thumb Drive over to the FBI. Crowder Stewart's evasive tactic is to reference the trial time and skips the investigation phase of which they were responsible for as well as the trial. They do not answer that question in documents filed since the trial ended.

14.

After meeting with me on numerous occasions, and with my continued questions concerning the Thumb Drive, why Crowder Stewart did not inform me of their concerns about additional charges and ask me to sign a waiver of acknowledgment? They then could have processed the Thumb Drive as Mr. Sias had directed over two years ago in May of 2020. After meeting with Mr. Sias many

times concerning his intent to testify at trial, Crowder Stewart presented Mr. Sias with two separate memorandums outlining their concerns about him taking the witness stand. Yet they did not do the same about the Thumb Drive, but continued to deflect, stall, and disregard Mr. Sias's concerns.

15.

Mr. Troy Clark, the attending attorney of Crowder Stewart, LLP in July 2022, after I had been indicted, informed me that Crowder Stewart LLP could no longer handle my case. When asked why, Mr. Clark said it's because of the Thumb Drive and that he might have to serve as a witness. He further said that Crowder Stewart would assist me in finding other competent counsel. Mr. Sias agreed and accepted the recommendation of Crowder Stewart helping him with finding new counsel.

16.

However, just days before the arraignment Mr. Clark informed me that Crowder Stewart would still represent me in my case, however he individually, would not participate. Facing an immediate arraignment date of August 4, 2021, I agreed to contract with Crowder Stewart on August 3, 2021.

17.

6.

On 3 August 2021 Crowder Stewart and I signed a second contract with a flat rate of $100,000.00. Mr. Sias paid $50,000.00 that day while giving his full faith promise to pay the rest as soon as possible.

18.

That contract contained a clause stating that an attorney from Crowder Stewart could potentially testify as a witness. Yet Crowder Stewart provided no clarification as to why this was included in the contract. This omission reflects a possible need to cover their improper actions. Furthermore, neither Mr. Crowder nor Mr. Stewart ever mentioned Mr. Clark as a possible witness after that date. Whenever I mentioned Mr. Clark reference the case it brought forth a hostile response. I wondered how Crowder Stewart could ignore such a conflict of interest when the attorney you referenced had already informed me that Crowder Stewart LLP could no longer represent me due to a conflict of interest.

19.

At my first meeting with David Stewart, I asked him if Mr. Clark would be in trouble about the Thumb Drive. Stewart sharply replied in a raised tone, "You might be the one in trouble." His vicious reply shocked me, so I dropped the issue for the moment. At a later meeting shortly after the encounter with Mr. Stewart, I asked Kenneth Crowder the same question. Mr. Crowder replied, "Troy Clark is a good attorney." When I continued to press Mr. Crowder about the issue, he became angry

7.

and sharply replied, "I wasn't there." After addressing this issue so many times without results, I began seeking outside legal counsel for advice concerning the mishandling of the Thumb Drive. This was done at additional expense and time. I continued consulting with outside counsel before and after my trial. I had no trust or confidence in Kenneth Crowder or David Stewart. Limitation of financial resources denied me my desire to dismiss Crowder Stewart as early as September 2021. It had become clear that Mr. Stewart and Mr. Crowder's focus was protecting their firm.

20.

Crowder Stewart then informed that they would send the Thumb Drive to a forensic expert in Florida to authenticate it. They did not seek my consent or opinion on the matter. This is evidence that I am very concerned about. Mr. Stewart explained that they were doing this because of a statement I made in a meeting with them after the Augusta 3, 2021 contract date. However, the evidence would later reveal that this claim was false.

21.

Evidence would later reveal that they sent the Thumb Drive to Florida within a few days after my indictment and prior to my arraignment. This was also prior to my second contract with Crowder Stewart. Yet, Kenneth Crowder and David Stewart assert they sent the Thumb Drive to Florida after first meeting with me as my attorneys.

8.

22.

Crowder Stewart never presented me with a report from the forensic expert they hired. Unexpectedly, they informed me that they intended to leave the Thumb Drive in Florida with the forensic expert for the duration of the case. I adamantly disagreed with this and requested that they return the original thumb drive to me. I did not request a copy at this point in the case. I never requested a copy of the thumb drive. I wanted the original returned to me.

23.

I requested the original back after it became clear that Crowder Stewart would not include the Thumb Drive in the court process. I never agreed with not presenting the Thumb Drive in the case as alleged by Crowder Stewart in their reply to the Georgia State Bar. One reason for requesting the drive back, I did not want the Thumb Drive to become lost in the shuffle, as I believed that to be the intent of Crowder Stewart. I did not trust them.

24.

Another reason for getting it back was to ensure the evidence would suffer no damage or disfigurement to the extent that it becomes inadmissible and unreadable.

25.

I gave the Thumb Drive to Crowder Stewart in May 2020, 13 months prior to the indictment by the government. I directed Crowder Stewart to turn the thumb

9.

drive evidence over to the FBI to answer their September 2019 subpoena. Crowder Stewart never followed those instructions.

Crowder Stewart sent the Thumb Drive evidence out of State to Florida without my knowledge or consent.

26.

Kenneth Crowder and David Stewart asserts in several different signed documents that they sent the Thumb Drive to Florida over concerns of comments they say I made during their initial interview after contracting on August 3, 2021, to represent me.

27.

The timeline and information above clearly show that Crowder Stewart rushed the Thumb Drive out of town without my knowledge or consent to do so. I provided this evidence to Crower Stewart for one singular purpose: The FBI's Investigation

28.

I questioned the lack of a strategic plan for the trial. Early on after the indictment, I even asked Mr. Stewart if they were afraid of Agent McKee. I raised this question out of frustration after Crowder Stewart's continued raving and admiration of FBI Agent McKee instead of focusing on my defense. As the trial date drew near, Mr. Crowder continued to muse day after day that the government wins 95% of their cases. He never stated this before receiving the majority of the

$100,000.00. I questioned Mr. Crowder as to how he intended to defend the charges? Mr. Crowder's reply implied that the primary defense he intended would be in the opening statement and the closing argument.

29.

Mr. Stewart did not attend any of the "weekly meetings" after the first three. Mr. Crowder spent the entirety of these meeting over the next year talking non-stop while allowing very little input from me. When I demanded that they hear me, Crowder would become upset. He advised that I did not fit their normal clients, who would not question anything that they directed. This unreasonable demand that I obey Crowder Stewart without question created an untenable situation for me.

30.

I also questioned why during the trial that Mr. Stewart spent an entire 20-minute trial break on Thursday, July 29, 2022, lollygagging with FBI Agent McKee instead of focusing on my defense. This lollygagging took place at the prosecution table. The prosecutors continued to arrange and confer about their notes. Mr. Crowder was out of the courtroom completely. I sat alone at the defense table the entire break without a word with the paid attorneys whose mission it was to defend me. This callous disregard of my case was typical of Crowder Stewart behavior toward me because I did not fit their demand of an obedient minority client.

31.

11.

When I recommended witness for the defense counsel to develop, I was met with negative replies from Kenneth Crowder. There existed no collaboration of trial strategy between Crowder Stewart and me. Those weekly meetings referenced in their reply to the state bar, consisted of Mr. Crowder talking from beginning to end. He expressed extraordinarily little interest in my input or thoughts. At times he would ask me him to do homework of which he never accepted nor expressed any interest in it later. It seemed like a ploy to "keep me busy."

32.

On one occasion after several minutes of intense arguments between Mr. Crowder and myself about me testifying, Crowder then said very rudely, okay answer a couple of questions. For the next three to four minutes Mr. Crowder asked me a few questions with the intent to intimidate me. It did not work. I remained undeterred. That one argument served as the preparation for my trial testimony.

33.

On another occasion, April 20, 2022, after we disagreed and argued at our previous meeting, when I arrived the next week, Kenneth Crowder said he had a memorandum for me. He then tossed it on the table and said, "You can read it after you leave." He then began his do not interrupt me monolog while resisting any input. This memo was an angry diatribe toward me that he called a trial approach/strategy. Crowder Stewart never developed a real trial strategy.

34.

Kenneth Crowder refused to aid in developing 98% of the witnesses I suggested, but simply dismissed them as character witnesses even after I presented narratives of how they could help the case. I even created created graphic charts and sample questions emphasizing how to develop these witnesses. Kenneth Crowder summarily rejected all my efforts. An unreasonable and toxic relationship existed between Crowder Stewart and me which became very detrimental to my case. We could not agree on anything. They never attempted to develop a trial strategy with me. They never prepped or aided me to testify.

35.

I believe attorneys of Crowder Stewart LLP, Augusta, Georgia willfully violated my constitutional rights. Their priorities were self-protection and financial gain. Instead of wasting time and effort as referenced in Mr. Crowder's strategy memo, Crowder Stewart should have prepared me and developed the witnesses, and the evidence for trial.

36.

As the trial date drew closer, their focus shifted to advocating a guilty plea from from me. Trial preparation as documented by evidence never occurred. I even requested that they prepare an Exhibit Binder for easy reference and review of defense exhibits. Kenneth Crowder said no. Yet at trial, after several confusing moments, the prosecution allowed him to use their organized exhibits display.

37.

Crowder Stewart did not redirect any defense witnesses.   Mr. Crowder was clearly hostile to me during my testimony.

38.

I believe that the time Crowder Stewart spent attempting to control, direct, and manage me was totally ineffective, a waste of time, and a disservice to my defense, the Judicial System and a violation of my Sixth Amendments Rights.

In witness whereof, I hereunto set my hand and affix my signature and seal under oath this 9th day of March, 2023.

*[signature]*
Sammie Lee Sias

Sworn to and subscribed before me this 9th day of March, 2023.

*[signature and notary seal: JAVON R. RIVERS, NOTARY PUBLIC, COLUMBIA COUNTY, GEORGIA, MY COMMISSION EXPIRES NOVEMBER 17, 2026]*

Notary Public (Commission Expires: 11/17/2026)

14.